CARE AND PROTECTION OF LEO.

No. 94-P-178.

Suffolk. January 17, 1995. - March 8, 1995.

Present: ARMSTRONG, DREBEN, & KASS, JJ.

*Child Abuse. Evidence*, Sexual conduct, Cross-examination, Credibility of witness, Hearsay, Criminal records, Prior misconduct. *Witness*, Unavailability. *Minor*, Care and protection. *Parent and Child*, Care and protection of minor.

At a care and protection proceeding, the judge properly allowed in evidence two investigative reports conducted by a licensed social worker appointed by the court that contained hearsay evidence of the father's sexual abuse of the child in question, where the father had the opportunity to rebut the report through cross-examination of the investigator and his sources, but rejected it, thus effectively waiving his right to complain of the hearsay. [240-243]

In a care and protection proceeding, error in the judge's admission in evidence of certain inadmissible reports of a social worker was not sufficiently prejudicial to require reversal of the judge's finding that the father was unfit, in light of the other extremely strong evidence of unfitness. [243-244]

At a care and protection proceeding, the judge did not err in weighing the father's entire lengthy criminal record as a factor bearing on parental fitness. [244]

PETITION filed in the Boston Division of the Juvenile Court Department on July 2, 1992.

The case was heard by *Mark E. Lawton*, J.

*Katherine Triantafillou* for the father.

*Alexander G. Gray, Jr.*, Special Assistant Attorney General, for Department of Social Services.

*Daniel Raphael Katz*, for the minor, submitted a brief.

DREBEN, J. Five year old Leo was found in need of care and protection by a judge of the Juvenile Court on a record consisting exclusively of documentary evidence — two reports of a court-appointed investigator, with appendices at-

tached, four reports of a social worker, and two letters to the court investigator. After a hearing, the judge ordered the child committed to the custody of the Department of Social Services (department).

The department, Leo's mother, and Leo, through counsel, rested on the documentary evidence. His father, while objecting to certain portions of the exhibits, did not call any witnesses or offer any additional evidence.

The focus of this appeal by Leo's father[1] from the determination that he was unfit to care for the child has somewhat changed by reason of the recent case of *Care & Protection of Rebecca*, 419 Mass. 67 (1994), which was published after the filing of the father's brief.[2] Relying on that case, the father claims that the out-of-court statements made by Leo do not meet the criteria for admissibility under G. L. c. 233, § 83, and that they are likewise not admissible under G. L. c. 119, § 24. In addition, the father argues that the judge admitted and impermissibly relied on stale prior convictions of the father, including a thirty year old conviction for indecent assault and battery on a minor; he also makes a claim not raised before the trial judge, or even in his original brief, namely, that the appendices to the court investigator's report, and the reports, other than those of the court investigator, should not have been admitted. As a discretionary matter,[3] we have considered this issue, presented for the first time in the father's supplemental brief filed after oral argument. We conclude that no injustice has resulted despite the inadmissibility for substantive purposes of these documents, or certain

---

[1] The mother, represented by counsel, consented to Leo's commitment to the custody of the department without an adjudication of her unfitness. She has had brain cancer, continues to be subject to frequent seizures, and is unable to care for herself or the child. On appeal, the child, also represented by counsel, supports the decision of commitment to the custody of the department.

[2] At oral argument the parties were given permission to supplement their briefs in light of the decision in *Care & Protection of Rebecca, supra.* Only the father has done so.

[3] Unfortunately, our review of the transcript of the March 11, 1993, hearing disclosed untoward bullying of counsel by the trial judge. This is one of the reasons we review an issue that was not raised below.

portions of them, as we are convinced, based on the admissible evidence, that the judge would have reached the same result without the items. Since other points raised by the father do not merit reversal, we affirm the judgment of the Juvenile Court.

1. *The investigator's reports.* The trial judge appointed a licensed social worker to conduct an investigation for the court. See G. L. c. 119, §§ 21 and 24.[4] The investigator interviewed numerous individuals including the child, the father, the child's foster mother, the father's thirty-seven year old daughter, and several social workers. He also referred in the report to a sexual abuse evaluation undertaken by Family Counseling Center, a program of the Massachusetts Society for the Prevention of Cruelty to Children.

Apart from hearsay considerations which we shall discuss below, the two reports, dated September 15, 1992, and February 12, 1993, respectively, present a sorry picture of physical abuse of the mother and the child by the father. In addition to the recitations of the mother and Leo of such abuse, the investigator recounted reports of hospital personnel indicating that the mother had bruises, a fractured nose, and cigarette burns. Some episodes of abuse, such as choking the mother, took place in front of Leo.

There was also ample evidence of the father's physical abuse of Leo. He, when questioned by the court investigator, stated that his father had hit him in the face, on the arm, and in the rear. His foster mother reported that he told her that his father had hit him. His biological mother stated that his father had slapped him in the face and, on one occasion, had hit him eight times with a stick. His stepsister, too, mentioned that her father had hit Leo with a stick.

The court investigator's report also revealed substantial evidence of sexual abuse of Leo by his father. When asked if his father touched him somewhere that he did not like, Leo told the court investigator that his father touched him between his legs and on his penis. Leo was overheard by his

---

[4] Under § 24, as appearing in St. 1983, c. 152, "Said report shall . . . be . . . a part of the record."

foster mother telling a friend that he was in a foster home because his father and mother beat him and because his father "touches me in my private places." He told his foster mother that his father touched him in his private parts, that he and his father slept in the same bed together, that his father was naked in bed, and that he, Leo, would sometimes lie on top of his father and "sometimes it was soft and sometimes it was hard." The touching occurred not only in bed but also in the bathroom and sometimes on the couch. He also told the sexual abuse evaluator of his father's sexual touches.

Leo's stepsister told a social worker who was seeing Leo in play therapy that she was concerned about possible sexual abuse of Leo, that the father had sexually abused her as a child and had held a gun against her head when she was fifteen years old, and that her father slept with Leo with an open robe or naked until Leo fell asleep. Thereafter he would ask her to babysit while he went out. He then paid her with drugs. The court investigator discussed with Leo's stepsister her own claim of sexual abuse by the father, and she "conveyed a very strong impression that the information she gave to the social workers was true."

The court investigator also reported that Leo masturbated and that at a day care center he once rubbed his penis against a teacher.

The father's counsel's primary objections at the hearing before the judge were based on G. L. c. 233, § 83, set forth in the margin,[5] which provides that one of the requirements for the admission of any hearsay statements of a child under

---

[5]General Laws c. 233, § 83, as inserted by St. 1990, c. 339, provides:

"(a) Any out-of-court statements of a child under the age of ten describing any act of sexual contact performed on or with the child, the circumstances under which it occurred, or which identifies the perpetrator offered in an action brought under subparagraph C of section twenty-three or section twenty-four of chapter one hundred and nineteen shall be admissible; provided, however that the person to whom the statement was made, or who heard the child make the statement testifies, and the judge finds that the statement is offered as evidence of a material fact and is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable effort.

the age of ten describing any act of sexual contact is that the person to whom the child made the statements must testify. On appeal, relying on *Care & Protection of Rebecca*, 419 Mass. at 83, the father argues that inclusion in the investigator's report does not dispense with the c. 233 requirements so as to make the child's statements admissible.

In *Rebecca*, a case where the mother was not permitted to call the children as witnesses, see *id.* at 76 n.10 (another important witness was also unavailable, see *id.* at 84 n.14), the Supreme Judicial Court concluded that "a judge who has before him out-of-court statements admitted under § 83 must consider the reliability of those statements," *id.* at 78, and must explain his reasons for relying on such evidence. *Id.* at 80. In discussing the relationship between § 83 and G. L. c. 119, §§ 21 and 24, the court cautioned that the fact that statements also appear in an investigator's report does not ipso facto render them admissible for their truth. For such admissibility, what is required is that there be "an opportunity to 'refute the investigator *and the investigator's sources* through cross-examination and other means.' "[6] *Id.* at 83 (emphasis in original), quoting from *Adoption of Carla*, 416 Mass. 510, 514 (1993), in turn quoting from *Custody of Michel*, 28 Mass. App. Ct. 260, 266 (1990).

"Cross-examination of the investigator provides an effective means to impeach the credibility of statements contained

---

"(*b*) An out-of-court statement admissible by common law or by statute shall remain admissible notwithstanding the provisions of this section."

[6]The court in *Rebecca* explained the term "other means." With respect to the statement of a child under the age of ten related to sexual abuse, "other means" refers to the determination required under § 83 that such evidence be reliable. *Id.* at 83. In discussing that determination, the court pointed out that cross-examination of the person to whom the statement was made "regarding the timing of the statement, the circumstances in which it was made, the language used by the child, and the child's apparent sincerity, or motive, in making the statement" were "important factors bearing on the reliability of a young child's statement concerning an incident of sexual abuse." Other possible indicia of reliability mentioned by the court were: "the consistency over time of a child's statements concerning abuse, or . . . expert testimony about a child's ability to remember . . . or other relevant personality traits," or the child's engaging in sexually explicit behavior. *Id.* at 79-80.

in the report," *Custody of Tracy*, 31 Mass. App. Ct. 481, 486 (1991), and thus determine their reliability. *Care & Protection of Rebecca*, 419 Mass. at 79-80. We do not read the language quoted in note 6, *supra*, to import into § 24 any requirement of reliability other than the opportunity "to rebut the report, including the right to cross-examine the investigator" and his sources. See *Gilmore* v. *Gilmore*, 369 Mass. 598, 605 (1976). See also paragraph (*b*) of § 83, note 5, *supra*.

The difficulty with the father's position is that he was repeatedly informed by the judge that he had a right to call the sources referred to in the investigator's reports. When asked, "When do you want to call them?" counsel specifically replied, "I don't."[7] As counsel, who was not appellate counsel, continued to object to hearsay statements, the judge again and again told him his remedy was to call the witness, indicating that he would continue the matter to a date the witness would be available, and, if the witness was unavailable for any reason, the court would allow a motion to strike the hearsay.

Throughout the hearing, counsel maintained that calling the witnesses would put the burden on the father, and the burden of production should be on the department. Appellate

---

[7]The colloquy continued:

THE COURT: "Well, if you don't — all of the case law says that you have one remedy; quadruple level hearsay comes into evidence, you know that."

COUNSEL: "I understand that."

THE COURT: "You know it now."

COUNSEL: "Yes, I did know that."

THE COURT: "Well, all right; that was not apparent based on your comments. . . . Your remedy is to call the witnesses, so if you choose not to call the witnesses, then you have no basis for objection."

COUNSEL: "I understand that."

THE COURT: "You do have a basis for objection if those sources are not here, and yet the Department wants to move this documentary evidence into evidence; then I would mark it as evidence notwithstanding your objection, but reserving your right to call those sources."

COUNSEL: "Thank you, your honor."

THE COURT: "If you choose not to call those sources, then you waive all of your rights to even object."

counsel also takes that position, arguing that the burden is on the department to produce clear and convincing evidence that the father is unfit and that the father's failure to subpoena the authors of the submitted documents "does not somehow render unreliable hearsay now reliable."

The opportunity to refute the report and to cross-examine the investigator and his sources is sufficient to protect the father's rights. This was stated in *Michel*, was reiterated in *Carla*, and was repeated in *Rebecca*. See *Care & Protection of Rebecca*, 419 Mass. at 83. Fairness to the father does not require placing the time-consuming burden on the department and the court of calling for testimony from the mouth of each contributor to the report no matter how uncontested his or her evidence. See *Adoption of George*, 27 Mass. App. Ct. 265, 273 (1989). Having seen the report, the father was in a position adequate to challenge any material therein with evidence of his own or to call any contributor to the report. By rejecting the opportunity given him by the court, the father lost, or effectively waived, his right to complain of the hearsay.

2. *Other documents.* As stated earlier, in addition to the two reports of the investigator, the department introduced in evidence four reports of a social worker and two letters. Since the letters were from personnel at the hospital and related only to the mother's ability to care for Leo, a question not relevant to this appeal, they need not be discussed. While the four reports of the social worker prepared in connection with these care and protection proceedings were not admissible substantively,[8] see *Care & Protection of Rebecca*, 419 Mass. at 84; *Adoption of George*, 27 Mass. App. Ct. at 270-271, we have no doubt that the judge would have reached the same result without the few additional facts that appeared in the social worker's reports but not in the investigator's reports. The same is true of the appendices to the investigator's report, although the opinions of the sexual abuse evaluator

---

[8]The § 51A and § 51B reports were, however, admissible to set the stage for the bringing of the care and protection petition. See *Care & Protection of Rebecca*, 419 Mass. at 71 n.5.

that some of Leo's statements were "highly credible" and that "the evaluation shows strong indications that [Leo] has been subjected to . . . sexual abuse" were both clearly inadmissible, *Care & Protection of Rebecca*, 419 Mass. at 83, and, in other circumstances, might be deemed sufficiently prejudicial to require reversal. In this case, however, the extremely strong evidence of both physical and sexual abuse of Leo contained in the investigator's report and reflected in the judge's findings, coupled with the father's long criminal record, see *infra*, part 3, and his failure to testify, *Custody of Two Minors*, 396 Mass. 610, 616-618 (1986), were, we are convinced, determinative for the judge.

3. *Criminal history.* The judge did not err in weighing the father's entire, lengthy criminal record as a factor bearing on parental fitness. *Care & Protection of Frank*, 409 Mass. 492, 494 (1991). See also *Care & Protection of Martha*, 407 Mass. 319, 325 n.6 (1990); *Adoption of Irwin*, 28 Mass. App. Ct. 41, 43 (1989).

*Judgment affirmed.*