NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1314                                    Appeals Court

ELAINE PASSERO vs. PAULA LIA FITZSIMMONS, trustee,[1] & another.[2]

No. 16-P-1314.

Essex.      May 3, 2017. - August 17, 2017.

Present:  Massing, Shin, & Ditkoff, JJ.

Trust, Breach of trust, Trustee's discretion, Exemption of
     trustee from liability, Removal of trustee, Trustee's
     compensation, Beneficiary, Distribution. Damages, Breach
     of fiduciary duty. Probate Court, Removal of fiduciary,
     Fiduciary's fees, Judicial discretion. Practice, Civil,
     Bias of judge, Waiver. Waiver.

     Civil action commenced in the Essex Division of the Probate
and Family Court Department on August 23, 2013.

     The case was heard by Peter C. DiGangi, J.

     George P. Lordan, Jr., (Anthony S. Porcello & Dennis P.
Derrick also present) for the defendants.
     Stefan L. Jouret (Rebecca Royer also present) for the
plaintiff.

---

[1] Of the Ralph DeMarco Revocable Trust.

[2] Madeline J. Lia, as trustee of the Ralph DeMarco Revocable
Trust.

SHIN, J.  This case involves a dispute over the administration of a share of a trust established for the benefit of the plaintiff and two of her three children.  The plaintiff brought suit against the defendant trustees, claiming, among other things, that they committed a breach of trust by paying for fifteen years of storage fees out of trust assets.  A judge of the Probate and Family Court agreed, ordered the defendants to repay the storage fees and other unaccounted-for sums to the trust, and removed the defendants as trustees.  We discern no error in these determinations and reject the various challenges that the defendants raise on appeal.

Nevertheless, we conclude that remand is required for two reasons.  First, the judge should not have appointed the plaintiff's children as successor trustees because they are themselves beneficiaries of the trust.  As such, they are interested parties and are barred by the trust document from exercising certain powers, including distributions.  Second, the judge was without authority to order the successor trustees to make monthly distributions to the plaintiff in a specified amount.  We therefore vacate the judgment as to the appointment of the successor trustees and the distribution of the trust's assets and remand for appointment of a disinterested successor trustee, who shall have the discretion to make distributions in

accordance with the trust instrument. We affirm the judgment in all other respects.

Background. We summarize the detailed findings of fact made by the judge, reserving some facts for later discussion. The settlor -- who is the father of the plaintiff and of defendant Madeline Lia, and the grandfather of defendant Paula Fitzsimmons (who is Lia's daughter) -- executed a declaration of trust in February of 1999. The trust provides for division of the settlor's estate into four equal shares upon his death. One share was to be held in a discretionary trust for the benefit of the plaintiff and two of her three children, Paul Passero and Alicia Passero,[3] with any balance remaining upon the plaintiff's death to be distributed to Paul and Alicia in equal shares.[4] The

---

[3] Because Paul and Alicia share the same last name, we will refer to them by their first names.

[4] In particular, article 4.2.2 of the trust document, entitled "Elaine's Trust," states:

"The [t]rustees shall hold, manage, invest, and reinvest one share as a separate trust for the benefit of the [s]ettlor's daughter, Elaine R. Passero and shall use any part or all of the net income and principal for the benefit of Elaine and her children, Paul Passero and Alicia Passero by making payments to or applying the same for any one or more of them at such time or times and in such amounts, proportions, and manner as the [t]rustees shall in their discretion deem advisable, with full power to accumulate any income not so paid or applied and to hold the same for future use or to add the same in whole or in part to principal until Elaine's death. At such time, the [t]rustees shall distribute all the property then remaining in Elaine's trust, free of all trusts, to Paul Passero and

remaining three shares were to be distributed to the other beneficiaries "free of all trusts."

After the settlor died in April of 2001, the defendants began administering the trust. By October of 2008, three-quarters of the trust assets had been distributed to the other beneficiaries, leaving the plaintiff (and Paul and Alicia) as the sole remaining beneficiaries. The defendants made no distributions to the plaintiff or her children until the judge ordered them, in May of 2016, to give the plaintiff a $25,000 advance so that she could pay her medical bills and obtain housing.

The primary issue at trial concerned the defendants' decision to pay storage fees out of the plaintiff's beneficial interest in the trust. Shortly after the settlor's death, the defendants identified items of the plaintiff's personal property that she had left in the settlor's home, and items of the settlor's personal property that he had allocated to the plaintiff in his will, and arranged for these items to be moved to a storage facility in Massachusetts. Subsequently, in 2003, the trust's attorney, Robert Madruga, sent the plaintiff a series of letters informing her that the property was in storage, that she needed to make arrangements to have it shipped

Alicia Passero in equal shares. In no event and under no circumstances shall the [t]rustees make any distributions to Mark P. Passero [the plaintiff's other child]."

to her, and that the trust would not pay the storage fees "for much longer."  In response to at least one of those letters, the plaintiff, who lived in California, asked Madruga for the location of the storage facility.  Acting on the defendants' instructions, Madruga refused to give her that information.

The plaintiff received no further communications about the property until June of 2008.  At that time Madruga sent her another letter in which he stated that she could not "cherry pick" the items, but had to accept all of them together, and refused again to provide the location of the storage facility.  Madruga sent two more letters to the same effect in March and April of 2009.  Thereafter, the plaintiff heard nothing more about the property until she filed this case in 2013.

In total, the defendants paid the storage fees for a period of fifteen years, expending over $50,000 out of the plaintiff's share in the trust.  They also used trust assets to pay for trustee's and attorney's fees and litigation expenses.  As a result, by December of 2013, the plaintiff's beneficial interest had been reduced to $463,719 from an opening balance of $542,042, even though the defendants had never made a distribution to her.  Her interest had been further reduced to approximately $250,000 by June of 2016 because the defendants continued to pay the storage fees, as well as litigation

expenses and trustee's and attorney's fees, while the case was ongoing.[5]

At the same time they were paying the storage fees, the defendants failed to provide the plaintiff or her children with accounts of the trust. Although the defendants prepared annual accounts from 2001 to 2008, they gave the plaintiff only the first two[6] and then ceased preparing accounts until late 2014, when they were required to do so by court order. In contrast, the defendants provided the other beneficiaries with each annual account from 2001 to 2008.

Discussion. 1. Breach of trust. Under the Massachusetts Uniform Trust Code (code),[7] a trustee has a duty "to administer

---

[5] Before trial started, the parties viewed the stored property pursuant to court order. Ultimately, the plaintiff chose about a third to keep, and the parties signed a stipulation, which the trial judge approved and incorporated into an order, agreeing that the plaintiff would pay to have the property shipped to her. The judge also ordered that the defendants bear their own attorney's fees and litigation costs with respect to claims on which the plaintiff prevailed.

[6] Fitzsimmons testified that she gave the accounts for 2003 to 2008 to the plaintiff's nephew, Philip DiNapoli. According to the plaintiff, however, she did not receive any of those accounts until DiNapoli gave them to her in 2014. The judge credited the plaintiff's testimony.

[7] The code was passed as an emergency act on July 8, 2012, effective the same date, and applies to "all trusts created before, on or after the effective date" and to "all judicial proceedings concerning trusts commenced on or after the effective date." St. 2012, c. 140, § 66. There is no dispute that the code governs this case, which was commenced in August of 2013.

the trust as a prudent person would, considering the purposes, terms and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill and caution." G. L. c. 203E, § 804. A trustee must at all times "administer the trust solely in the interests of the beneficiaries." Id. § 802(a). "A violation by a trustee of a duty the trustee owes to a beneficiary shall be a breach of trust." Id. § 1001(a).

The judge concluded that the defendants failed to act prudently, and thereby committed a breach of trust, by using the plaintiff's share of the trust to pay for fifteen years of storage fees. We discern no clear error in this ruling. See Woodward Sch. for Girls, Inc. v. Quincy, 469 Mass. 151, 159, 167 (2014) (reviewing for clear error judge's finding that trustee breached fiduciary duty). As the judge determined, despite telling the plaintiff in 2003 that the trust would not pay for the storage fees "for much longer," the defendants continued to pay them for many more years without the plaintiff's authorization. At the same time, the defendants failed to provide the plaintiff with accounts of the trust and failed to communicate with her for nearly five years between 2003 and 2008, and again for four years between 2009 and 2013. In addition, when the plaintiff requested information about the storage facility, the defendants refused to give her that

information.  Through their actions the defendants depleted the plaintiff's beneficial interest "by at least ten percent."  This evidence was sufficient for the judge to find that the defendants "imprudently wasted [t]rust assets," in violation of their duty under G. L. c. 203E, § 804.  Cf. Woodward Sch. for Girls, 469 Mass. at 167 (judge did not clearly err in finding breach of fiduciary duty where trustee "failed to invest with the long-term needs and best interests of the income beneficiary in mind").

In reaching his decision, the judge did not, as the defendants argue, "reform" the trust document "[b]y nullifying the [t]rustees' discretionary power to manage the [t]rust."  The judge acknowledged that the defendants had discretion over how to administer the plaintiff's share of the trust.  But as the defendants concede, their discretion was not boundless.  "[E]ven very broad discretionary powers" conferred by a trust instrument "are to be exercised in accordance with fiduciary standards and with reasonable regard for usual fiduciary principles."  Old Colony Trust Co. v. Sillman, 352 Mass. 6, 10 (1967).  See Fine v. Cohen, 35 Mass. App. Ct. 610, 617 (1993) ("Even when there are broad discretionary powers, a trustee may not exercise his or her discretion so as to shift beneficial interests in the trust").  As the code specifically provides, "[n]otwithstanding the broad discretion granted to a trustee in the terms of the

trust, including the use of such terms as 'absolute,' 'sole' or 'uncontrolled,' the trustee shall exercise a discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." G. L. c. 203E, § 814(a). The judge properly found, based on the evidence presented, that the defendants did not adhere to usual fiduciary principles or act in the plaintiff's interests. Contrary to the defendants' assertions, this factual determination did not constitute a reformation of the trust.

We also reject the defendants' reliance on the exculpatory clause of the trust document, which states: "Unless due to his own wilful default or gross negligence, no [t]rustee shall be liable for his acts or omissions or those of any co-[t]rustee or prior [t]rustee." The code renders a trustee exculpatory clause "unenforceable to the extent that it . . . relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries." Id. § 1008(a)(1).[8] In addition, the case law has long defined the phrase "wilful default" to include acts committed "with reckless indifference to the interest of the beneficiary." New England Trust Co. v. Paine, 317 Mass. 542, 548, 550 (1945). Here, the judge

_____

[8] An exculpatory clause is also unenforceable if it "was inserted as the result of an abuse by the trustee of a fiduciary or confidential relationship to the settlor." Id. § 1008(a)(2).

expressly found that the defendants' "breach of trust was committed with reckless indifference to the interests of the beneficiaries." As there was ample evidence to support this finding, we agree with the judge that the exculpatory clause does not shield the defendants from liability.

Last, none of the miscellaneous factual challenges raised by the defendants demonstrates clear error. The defendants claim that the plaintiff authorized them to store the property, but the judge was entitled to credit the plaintiff's testimony to the contrary. See Demoulas v. Demoulas Super Markets, 424 Mass. 501, 510 (1997), quoting from Gallagher v. Taylor, 26 Mass. App. Ct. 876, 881 (1989) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous"). Nor was it clear error for the judge to find that the defendants failed to give the plaintiff the annual accounts for 2003 to 2008. As mentioned, the judge credited the plaintiff's testimony that she did not receive the accounts until DiNapoli gave them to her in 2014. Although the defendants argue that they should have been allowed to call DiNapoli to testify as a rebuttal witness, there is no indication in the record that they asked for that opportunity at trial. Having failed to ask, they cannot now complain of error

on appeal.  See <u>Care & Protection of Leo</u>, 38 Mass. App. Ct. 237, 243 (1995).[9]

2.  <u>Removal of defendants as trustees</u>.  The defendants also argue that the evidence did not justify the judge's decision to remove them as trustees.  Under the code a judge may remove a trustee where "because of unfitness, unwillingness or persistent failure of the trustee to administer the trust effectively, the [judge] determines that removal of the trustee best serves the interests of the beneficiaries."  G. L. c. 203E, § 706(<u>b</u>)(3).[10] We review a removal of a trustee only "to determine whether the judge's findings are clearly erroneous . . . or whether there has been an abuse of discretion."  <u>Matter of the Trusts Under the Will of Crabtree</u>, 449 Mass. 128, 136 (2007).

---

[9] The defendants further contend that the judge erred by faulting them for not making distributions to the plaintiff, given that she never asked for one.  We need not reach this argument -- or the plaintiff's counterargument that the defendants had an affirmative obligation under the code to inquire into her needs and finances -- because the judge did not rely on the defendants' failure to make distributions as a basis for his finding of breach of trust.

[10] The code also authorizes removal if "the trustee has committed a serious breach of trust"; "there is a lack of cooperation among co-trustees that substantially impairs the administration of the trust"; or "there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust and a suitable co-trustee or successor trustee is available."  G. L. c. 203E, §§ 706(<u>b</u>)(1), (<u>b</u>)(2), and (<u>b</u>)(4).

The judge appropriately concluded that removal was warranted in this case because the defendants "persistently failed to administer the [t]rust effectively by expending [t]rust funds on storage fees," rendering "their removal . . . in the best interests of [the plaintiff]." As discussed above, the judge's findings are not clearly erroneous, and we discern no abuse of discretion in his conclusion that removal would best serve the plaintiff's interests. The evidence supports his determination that the defendants' "actions, including their failure to provide [the plaintiff] with the accounts despite providing them to [the other] beneficiaries and their unreasonable refusal to provide [the plaintiff] with the address of the storage facility, demonstrate their hostility towards her." See Shear v. Gabovitch, 43 Mass. App. Ct. 650, 689 (1997) ("It is appropriate to remove a trustee when hostile feelings threaten to interfere with the administration of the trust"); G. L. c. 203E, § 803 ("If a trust has [two] or more beneficiaries, the trustee shall act impartially in investing, managing and distributing the trust property, giving due regard to the beneficiaries' respective interests"). Furthermore, the judge heard Fitzsimmons testify and found, based on her "tone and demeanor," that she harbored "animus" towards the plaintiff. Although the defendants contest that finding, assessing the credibility of the witnesses was squarely within the purview of

the judge.  See E.C.O. v. Compton, 464 Mass. 558, 562 (2013); Castricone v. Mical, 74 Mass. App. Ct. 591, 600 (2009).

3.  Disallowance of trustee fees.  The judge did not clearly err in disallowing a portion of the trustee fees claimed by the defendants.  The judge allowed all of Fitzsimmons's fees, totaling $56,293, and $7,000 in fees paid to Lia in 2003.  But given the lack of evidence that Lia had any involvement in administering the trust after 2008, the judge found that she did not earn her claimed fees of $3,715 in 2010 and ordered her to repay that amount to the trust.  The defendants challenge the disallowance on the sole basis that they were not given the opportunity to call Lia to testify.  Once again, however, the record does not reflect that they made any such request at trial.  Their argument is therefore waived.  See Care & Protection of Leo, 38 Mass. App. Ct. at 243.

4.  Alleged bias of judge.  The defendants' final contention is that the judge was biased against them, as demonstrated by his "unbending disbelief of their proof and his carte blanche adoption of [the plaintiff's] evidence."  Putting aside that the defendants did not raise this issue below, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  Liteky v. United States, 510 U.S. 540, 555 (1994).  See Erickson v. Commonwealth, 462 Mass. 1006, 1007 (2012).  They can form a valid basis only "in the

rarest circumstances" where they "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky, 510 U.S. at 555. Accord Demoulas, 424 Mass. at 524-526; Commonwealth v. Williams, 456 Mass. 857, 874 (2010). Nothing in the record supports the defendants' allegation that the judge harbored such deep-seated favoritism or antagonism. Indeed, the judge ruled in the defendants' favor on several issues, including on the plaintiff's claim that they failed to invest the trust assets prudently and on the majority of the defendants' request for allowance of their trustee fees. In short, we see no evidence that the judge was biased or that he was "influenced by any considerations other than the law." Erickson, 462 Mass. at 1007, quoting from Commonwealth v. Daye, 435 Mass. 463, 470 n.4 (2001).

5. Appointment of successor trustees. While we uphold the judge's findings of fact and rationale, we conclude that he erred by appointing Paul and Alicia as successor trustees and by ordering them to "make monthly distributions from the [t]rust assets to [the plaintiff] in the amount of $4,000[] per month." The trust document provides that certain powers are "exercisable by disinterested trustees only," including "mak[ing] any distribution or separation into shares." An "interested trustee" is defined to include a trustee "who is then eligible

. . . to receive income or principal from the trust." Paul and Alicia fall within this definition because article 4.2.2 authorizes the trustees to "use any part or all of the net income and principal" for the benefit of the plaintiff, Paul, and Alicia "by making payments to . . . one or more of them at such time and times and in such amounts, proportions, and manner as the [t]rustees shall in their discretion deem advisable." Thus, because they are not "disinterested," Paul and Alicia lack powers essential to administering the trust, and so the judge should not have appointed them as successor trustees.

In addition, the judge should not have ordered the successor trustees to make distributions to the plaintiff. Article 4.2.2 gives the trustees the power to make distributions in their discretion, which encompasses the "full power to accumulate any income . . . and to hold the same for future use or to add the same in whole or in part to principal until [the plaintiff's] death." By requiring distributions, the judge modified the terms of the trust when no request for modification was before him, and without following the procedures for modification set out in the code. See G. L. c. 203E, §§ 410- 415. Accordingly, we vacate the judgment as to the appointment of the successor trustees and the order requiring distributions, and remand for appointment of an independent trustee, who shall have the discretion to make distributions in accordance with

article 4.2.2 of the trust instrument.  In all other respects the judgment is affirmed.

<u>So ordered</u>.