NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-476

ADOPTION OF GERI.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a four-day trial, a judge of the Juvenile Court found the mother unfit to parent her child, Geri, terminated her parental rights, and ordered posttermination and postadoption visits for the mother and Geri.  Both the mother and Geri have appealed, arguing that the judge abused her discretion in finding that the mother's unfitness was not temporary, and in finding that termination was in Geri's best interests. The mother contends that the judge erroneously relied on impermissible hearsay in reaching those conclusions.  In addition, Geri argues that the judge abused her discretion in

---

[1]  A pseudonym.

setting certain conditions for posttermination and postadoption visitation.  We affirm.[2]

Background.  The mother gave birth to Geri in March 2019 and moved with her to North Dakota two months later.[3]  In August 2020, when Geri and the mother returned to Massachusetts, the department received a report filed pursuant to G. L. c. 119, § 51A (51A report), alleging neglect of Geri by the mother due to concerns about the mother's mental health and medical neglect of Geri.[4]  Prior to filing the instant care and protection petition, the department had received four additional 51A reports alleging neglect of Geri by the mother.[5]

The mother has been diagnosed with multiple mental health disorders, including bipolar disorder and post-traumatic stress

---

[2] The father's rights were also terminated but he has not appealed and is not a party to this appeal.

[3] The trial judge made 355 "specific and detailed" findings in support of her decision to terminate the mother's parental rights, and the findings "demonstrate that close attention has been given the evidence."  Custody of Eleanor, 414 Mass. 795, 799 (1993).

[4] The allegations of neglect were supported.

[5] The department received 51A reports in September 2020, October 2020, and two in February 2022.  All these reports alleged neglect of Geri by the mother due to concerns with the mother's mental health.  The allegations, except for those in the first February 2022 report, were supported following 51B investigations.

disorder.  In October 2020, the department conducted an emergency removal of Geri and filed a care and protection petition after the mother was hospitalized for making threats to murder Geri's father and paternal grandmother.[6]  Sometime after her commitment, the mother started taking her prescribed medications and complied with most of her service plan, and the petition was dismissed in March 2021.

By September 2021, the mother had stopped taking her medications and was having suicidal thoughts.  In February 2022, the mother was psychiatrically hospitalized for the second time, the department removed Geri from the mother, and the department filed the instant care and protection petition.[7]  Around March 2022, the mother resumed taking her medications, and for the next year, the department's goal for Geri was reunification. Between March 2022 and 2023, the mother adhered to most of the

---

[6] The mother and Geri were residing at a shelter at that time.  The mother was transported to the emergency room by the police due to concerns for her mental health and homicidal statements.  Once in the emergency room, the mother's condition "escalated" and she was committed under G. L. c. 123, § 12.

[7] Geri was initially placed with her paternal aunt.  The aunt asked that Geri be removed from her care after the mother falsely accused her of living in a drug house.  Geri was then placed with a new foster family.  After the goal changed to adoption, the family was approved as Geri's pre-adoptive family. However, after trial began, the family withdrew their application due to concerns about how the mother's mental health would impact their family.

department's action plan.  However, in March 2023, the mother again stopped taking her medications, and she was hospitalized for a third time in June 2023.  In October 2023, the department changed its goal for the Geri to adoption due to the mother's ongoing mental health struggles, inconsistent and unverified commitment to treatment, failure to communicate with the department, inappropriate behavior toward social workers, and unstable living situation.  The mother resumed taking her medications in November 2023 leading up to trial, which began in February 2024.

The mother's lack of consistency in addressing her mental health disorders contributed to a pattern of housing insecurity and erratic behaviors.  When Geri was approximately two months old, the mother and Geri moved from Massachusetts to North Dakota, and during that time her housing was unstable.  Since returning to Massachusetts in August 2020, the mother has lived with friends and in various shelters and apartments.  The mother was forced out of apartments at least twice "for aggressive and threatening behaviors."  At the start of trial, the mother was in a shelter placement that was set to expire in May 2024.  In addition to housing insecurity, the mother's "inability to control unparental traits of character and conduct" resulted in a pattern of aggressive and threatening behaviors toward social

4

workers and family members, including threats of murder, arson, and suicide, and harassing behavior.

The department's concerns about the mother's parenting were based on her mental health challenges and lack of consistency in taking medications and following treatment plans and not on her inability to bond with Geri. Indeed, the mother and Geri have an observable bond, and during visits, the mother was "gentle and appropriate."

Following trial, the judge found the mother unfit and Geri in need of care and protection. The judge approved the department's plan for adoption of Geri by maternal grandmother, contingent on approval of an Interstate Compact on the Placement of Children (ICPC) home study. The judge also determined that no fewer than four posttermination and postadoption visits between the mother and Geri, subject to the mother's mental stability, would be in Geri's best interests. The judge ordered, however, that if the mother missed two consecutive visits, the obligation of Geri's custodian to provide four annual visits would be null and void, though the parental custodian would still have discretion to allow for parent-child contact so long as such contact was in Geri's best interests.

Discussion. 1. Termination. "In deciding whether to terminate a parent's rights, a judge must determine whether

5

there is clear and convincing evidence that the parent is unfit and, if the parent is unfit, whether the child's best interests will be served by terminating the legal relation between parent and child." Adoption of Ilona, 459 Mass. 53, 59 (2011). On review, we "give substantial deference to a judge's decision that termination of a parent's rights is in the best interest[s] of the child and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Yalena, 100 Mass. App. Ct. 542, 549 (2021), quoting Adoption of Ilona, 459 Mass. at 59.

"The concepts of parental fitness and a child's best interests are not separate and distinct but, instead, are cognate and connected steps that reflect different degrees of emphasis on the same factors" (quotations and citation omitted). Adoption of Flavia, 104 Mass. App. Ct. 40, 45 (2024). In determining a child's best interests, a judge must decide whether "the parent's unfitness at the time of trial may only be temporary" before taking the "extreme step" of terminating the parent's rights (citations omitted). Adoption of Ilona, 459 Mass. at 59. However, a finding that unfitness is only temporary "must rest on credible evidence supporting a reasonable likelihood that the parent will become fit, not on a 'faint hope'" (citation omitted). Id.

6

a.  Mother's unfitness.  The mother and Geri contend that the judge abused her discretion in finding the mother unfit to parent Geri because the mother substantially completed her action plan tasks and was taking her prescribed medications at the time of trial.[8]  We disagree.  When faced with a petition to terminate parental rights, the judge must find by clear and convincing evidence that the parent is unfit, and that "the unfitness will continue undiminished into the future, affecting the welfare of the child."  Adoption of Lisette, 93 Mass. App. Ct. 284, 296 (2018).  "Parental unfitness is determined by considering a parent's character, temperament, conduct, and capacity to provide for the child's particular needs, affections, and age."  Adoption of Anton, 72 Mass. App. Ct. 667, 673 (2008).  In determining future fitness, the judge "properly may consider a pattern of parental neglect or misconduct." Adoption of Elena, 446 Mass. 24, 33 (2006).  The judge's subsidiary findings must be proved by a preponderance of the evidence and will only be disturbed if clearly erroneous.  See Adoption of Patty, 489 Mass. 630, 637 (2022).

---

[8] "Despite the moral overtones of the statutory term 'unfit,' the judge's decision [is] not a moral judgment or a determination that [the mother] do[es] not love [Gerri]." Adoption of Bianca, 91 Mass. App. Ct. 428, 432 n.8 (2017).

7

Having carefully reviewed the record, "[w]e see no basis for disturbing the judge's view of the evidence." Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997). Here, the judge properly relied on evidence of the mother's longstanding mental health issues and inconsistent participation in treatment in concluding that "[t]he mother's mental health has directly impacted her care of the child." The judge found that the mother "does not believe in taking medication and stops taking it periodically." While the mother has on occasion cooperated with treatment and "stabilizes . . . on prescribed medication" in accordance with a treatment plan, she has been unable to consistently maintain compliance with her treatment protocols. The mother's "lack of consistency in treatment" led to three separate psychiatric hospitalizations resulting in removal of Geri and contributed to her housing instability and her threatening and aggressive behavior toward family members and department staff.

Although, in 2022, after the child was removed, the mother completed action plan tasks and demonstrated "continued personal growth," she again struggled to maintain compliance and complete tasks in the year preceding the trial. For example, she did not

complete a mental health safety plan with her therapist,[9] did not comply with meetings with her Homeless Navigator -- resulting in her being discharged from that service -- and refused to cooperate with her Department of Mental Health program. The mother also twice disrupted Geri's foster placements by making unsupported allegations against the caregivers. Moreover, at trial, the mother acknowledged that taking her medications was "a requirement for [her] to get [her] daughter back," but she did not commit to continuing her medications if she moved back to North Dakota. Although she created a mental health safety plan with her private social worker, she was not following the plan when she signed it and did not comply with it as her mental health deteriorated. The mother does not recognize when she is decompensating even when it results in her making threats of murder, arson, and suicide. Based on the evidence, the judge properly found that "there is a nexus between Mother's mental health" and "danger to [Geri]" if they were to be reunified. The judge was not required to provide the mother with infinite chances to address her parenting deficiencies. See <u>Adoption of Nancy</u>, 443 Mass. 512, 517 (2005) ("In these circumstances, where the [parent] has had ample opportunity to achieve fitness as a

---

[9] The judge acknowledged that the mother's therapist was at least somewhat responsible for this.

parent but has failed to follow through, it is only fair to the children to say, at some point, 'enough'").  See also Adoption of Ilona, 459 Mass. at 60 ("Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period").

Finally, while the judge considered a 51A report alleging medical neglect of Geri, she did not base her unfitness determination on that evidence, as claimed by the mother.  In considering evidence that Geri was medically behind when she was removed from the mother, the judge did not make a finding of medical neglect and noted, instead, that the mother expressed willingness to engage in recommended services.  The judge found, however, that the mother's mental health issues affected her "capacity to provide for the child's particular needs." Adoption of Anton, 72 Mass. App. Ct. at 673.

b.  Geri's best interests.  The mother and Geri argue that it was not in Geri's best interests to terminate the mother's parental rights because the mother and Geri shared a strong bond and the mother's unfitness was temporary where evidence demonstrated that she was taking steps to address her mental health issues and housing instability.  We disagree.  Where the judge properly found that the mother was unfit and that her unfitness was not temporary, and where mother's lack of

10

consistency in mental health treatment "would place [Geri] in danger," terminating the mother's rights was not an abuse of discretion.  See Adoption of Ilona, 459 Mass. at 62.

Geri asserts that in light of her bond with her mother, Geri's "present or future welfare" does not "demand" termination of the mother's parental rights.  Adoption of Carlos, 413 Mass. 339, 350 (1992).  Notwithstanding even a strong bond, given Geri's need for stability and the judge's warranted determination that "the mother would not become fit in the foreseeable future," the judge "did not err in terminating the mother's parental rights."  Adoption of Bianca, 91 Mass. App. Ct. 428, 432 (2017).  The judge properly accounted for the parent-child bond by ordering visitation between the mother and Geri.  See Adoption of Franklin, 99 Mass. App. Ct. 787, 807 (2021).

c.  Hearsay.  The mother argues that the judge' findings relied on inadmissible hearsay in 51A and 51B reports and in other department-created documents.  Specifically, she claims that forty-three of the 355 findings are based on inadmissible hearsay.  We note that the record does not indicate that the mother tried to subpoena the declarants who the mother now claims were unavailable for cross examination at trial, namely Geri's father and employees of the North Dakota Child Protective

11

Services. "If the source of a challenged statement is not already present in court, the burden to subpoena that source rests with the party challenging the statement's admission." Adoption of Luc, 484 Mass 139, 150 (2020). Because the mother made no attempt to subpoena the sources of the hearsay who were not present at the trial, she has waived her claim that they were unavailable. See Care & Protection of Leo, 38 Mass. App. Ct. 237, 243 (1995).

However, even if the judge erred in admitting and relying on impermissible hearsay, "there was no resulting prejudice." See Adoption of Luc, 484 Mass. at 149. The judge's findings, excluding the forty-three challenged findings, provided sufficient evidence of the mother's longstanding mental health issues and housing instability, her threatening and aggressive behavior toward family and department staff, and her pattern of noncompliance with department action plans. Such evidence demonstrated a nexus to her parental unfitness and supported the judge's ultimate conclusion. See Adoption of Kimberly, 414 Mass. 526, 538 (1993) (no prejudice where findings based on alleged inadmissible evidence "not so inconsistent with the judge's other findings as to raise any question concerning his ultimate conclusion"). Further, in her conclusions of law, the judge set forth the proper evidentiary and hearsay principles

12

applicable to department-created documents.  We see nothing in the record to intimate that the judge did not follow these principles by using statements for anything more than the purpose for which they were admitted.  See Commonwealth v. Watkins, 63 Mass. App. Ct. 69, 75 (2005).

2.  Posttermination and postadoption visitation.  Geri also argues that the judge abused her discretion in placing certain conditions on the mother's right to visit with Geri posttermination and postadoption.  We disagree.  "A judge may decline to order postadoption visitation, or 'may order limited postadoption contact, including visitation, between a child and a biological parent where such contact is currently in the best interests of the child.'"  Adoption of Saul, 60 Mass. App. Ct. 546, 556 (2004), quoting Adoption of Vito, 431 Mass. 550, 553 (2000).  "[A]n order for postadoption contact is grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation" (citation omitted).  Adoption of Saul, supra.  "In issuing such an order, the judge must determine that '[o]nce it [has been] established that a parent is unfit, the decision whether to grant postadoption [or posttermination] visits must

13

be left to the sound discretion of the trial judge.'" <u>Adoption</u> <u>of Zander</u>, 83 Mass. App. Ct. 363, 365 (2013), quoting <u>Adoption</u> <u>of Terrence</u>, 57 Mass. App. Ct. 832, 839 (2003).

Here, the judge, acknowledging the "strong and affectionate" bond between Geri and the mother, found that posttermination and postadoption contact would be in Geri's best interests, and that no fewer than four visits per year was appropriate, subject to the mother's mental stability. The judge gave Geri's custodian discretion to cancel any visit if the mother's mental health is not stable. The obligation of Geri's custodian to provide at least four visits per year "shall be null and void" if two consecutive visits are canceled due to the mother's behavior. However, even if the mother does miss two consecutive visits, the custodian is not foreclosed from arranging visits between the mother and Geri so long as such visits are "consistent with the child's best interests." See <u>Adoption of Ilona</u>, 459 Mass. at 64 (adoptive parents presumed to act in child's best interests). Based on the mother's longstanding mental health issues and their impact on Geri's stability and wellbeing, it was not unreasonable for the judge

14

to set these conditions on parent-child visits.  We conclude there was no abuse of discretion.

Decrees affirmed.

By the Court (Vuono, Shin &
  Smyth, JJ.[10]),

_Paul Little_

Clerk

Entered:  January 9, 2026.

---

[10] The panelists are listed in order of seniority.